No. 21,029.

THE INTERNATIONAL HARVESTER COMPANY OF AMERICA, *Appellant*, v. THE FRANKLIN COUNTY HARDWARE COMPANY et al. (W. L. DELANO and ELLA HANNA, *Appellees*).

### SYLLABUS BY THE COURT.

1. NOTE — *Signed by Directors of Corporation — Fraud — Presumptive Knowledge of Directors.* Where one assuming to have knowledge of the facts induces the director of a corporation to sign a note by false statements regarding its business, a defense to the note on the ground of such fraud is not rendered unavailable to the signer by constructive knowledge of the company's transactions imputable to him as one of its officers.

2. SAME—*Fraudulent Representations—Evidence.* Although one of the persons alleged to have been defrauded did not testify to the making of the false statement relied upon, that omission was supplied by other testimony, and there was room for an inference that he was influenced thereby.

3. SAME. Where a creditor, for the purpose of inducing a director to sign the note of a corporation, falsely represented to him that the note was secured by assets in the hands of the corporation sufficient to meet it, the fact that the director relied upon the statement without further inquiry is not fatal to a defense based on the fraud.

4. SAME—*Instruction Asked—Refused—Not Error.* Where the jury were instructed that a recovery on the ground of fraud could be had only if certain statements had been made, it was not error to refuse an instruction that such a recovery could not be based on a finding that the statement was not made, but that words were spoken which the person addressed believed, with good reason, were intended to be so understood.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed October 6, 1917. Affirmed.

*Edgar C. Ellis, Hale H. Cook, Raymond G. Barnett,* and *Roy K. Dietrich,* all of Kansas City, Mo., for the appellant.

*F. M. Harris,* and *F. A. Waddle,* both of Ottawa, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The International Harvester Company brought an action upon a promissory note signed by the Franklin County Hardware Company, a corporation, and by several

individuals who were directors thereof. Two of the signers, W. L. Delano and Ella Hanna, defended on the ground that their signatures had been procured by fraud. Judgment was rendered in their favor, and the plaintiff appeals.

The hardware company handled the plaintiff's goods under a contract providing that the title should remain in the plaintiff, and that sales should be made only for cash, except in the case of some of the larger and more expensive implements, which might be sold on time, notes for the deferred payments to be taken directly to the plaintiff. In September, 1915, an agent of the plaintiff visited the establishment of the hardware company and found that it had sold goods consigned by the plaintiff to the amount of $1200, and had no cash on hand with which to pay the plaintiff's claim therefor. The hardware company asked time in which to make payment, and the plaintiff's agent agreed to accept the company's note, payable January 1, 1916, provided it should be signed by four persons whom he named, who were directors of the corporation. Such a note was executed, and is that sued upon. The appellees, W. L. Delano and Ella Hanna, pleaded that their signatures were procured by the false representation, made to them by the plaintiff's agent, that the hardware company had on hand proceeds of sales of the plaintiff's merchandise, in the form of uncollected notes and accounts, sufficient to meet the $1200 note. The plaintiff denied that such representation had been made. The case was submitted to the jury under such instructions that the verdict implied findings that the plaintiff's agent made the statement referred to, knowing it to be false, for the purpose of inducing the appellees to sign the note, and that they believed it and attached their signatures in reliance thereon, having no actual knowledge of the business of the hardware company, not having been actively engaged in its management.

The principal contention of the appellant is that the defense on which the appellees prevailed was not open to them because, being directors of the hardware company, they were conclusively presumed to know the condition of its business and could not be heard to say that they had been misled by any statements regarding it. In some situations the managing officer of a corporation is held to be chargeable as a matter

of law with knowledge of all its transactions. (*Savings Bank v. Wulfekuhler,* 19 Kan. 60; *Merchants' Bank v. Rudolf,* 5 Neb. 527; *Tate, Treasurer, v. Bates,* 118 N. C. 287; 7 R. C. L., p. 658.) This principle has sometimes been announced in such terms as to give countenance to the idea that it is of universal application. Such expressions must of course be regarded as made with reference to the facts under consideration, without a purpose to forestall the decision of some question other than that involved, arising out of different circumstances. This court has held that the presumption that a director is familiar with all the business transactions of a corporation is not applicable in all relations. (*National Bank v. Drake,* 29 Kan. 311.) And it has often been said that the presumption is not necessarily conclusive. (*Proctor v. Baldwin,* 82 Ind. 370; *Boddy v. Henry,* 113 Iowa, 462; *Murray v. Nelson Lumber Co.,* 143 Mass. 250; *Wakeman v. Dalley,* 51 N. Y. 27; *Converse v. Sharpe,* 161 N. Y. 571; *Mason v. Moore,* 73 Ohio St. 275; Elliott on Private Corporations, 4th ed., § 516; 10 Cyc. 826.) In *Snider v. McAtee,* 165 Mo. App. 260, the court refused to apply the presumption to defeat an action for fraud. One form in which the rule has been stated is that the director is chargeable with all matters which it is his duty to know. (21 A. & E. Encycl. of L. 896.) It may well be doubted whether in the situation here presented the appellees owed any duty to the plaintiff to be familiar with the business of the hardware company. But it is not necessary to lay down any general rule as to how the application of the principle of constructive notice is affected by the relations of the parties to the controversy. It is sufficient for present purposes to say that one who has misled another by a fraudulent misrepresentation can not escape the ordinary consequences of his wrong by showing that although his victim in fact knew nothing of the matter, knowledge was to be imputed to him upon some legal theory. "The law of constructive notice can never be so applied as to relieve a party from responsibility for actual misstatements and frauds." (12 R. C. L., p. 376.)

It was at one time suggested by this court that in view of the statute providing that the record of a deed should "import notice to all persons of the contents thereof," and that "all subsequent purchasers . . . . . shall be deemed to purchase

with notice" (Gen. Stat. 1915, § 2069), "it may be that a subsequent purchaser would not be heard to say that he had no notice of a prior [recorded] deed, or was imposed upon by the false representations of his vendor as to the title." (*Claggett v. Crall*, 12 Kan. 393, 397.) But when the question arose in such manner as to require a decision it was held that a fraudulent representation, by one assuming to have personal knowledge, that there was no incumbrance on a tract of land, is actionable, notwithstanding the record showed the contrary. (*Carpenter v. Wright*, 52 Kan. 221, 34 Pac. 798.)

The plaintiff contends that its demurrer to the evidence of W. L. Delano should have been sustained on the ground that no showing was made that he had been influenced at all by the alleged misstatements of the plaintiff's agent. Delano was 82 years of age and said that he did not remember all of the conversation; that he would not have signed the note if he had not believed that the hardware company had notes and accounts arising from the sale of the plaintiff's goods sufficient to meet it; that the agent said the comany had enough notes and accounts to pay it; and that he (Delano) supposed the notes referred to belonged to the plaintiff; but he did not testify that the agent said that this was the case. His daughter, however, who seemed to be advising him in the matter, testified that the agent made the statement referred to, and we think that there was room to infer that Delano's belief was influenced thereby.

Complaint is made of the refusal of an instruction to the effect that the appellees were not entitled to relief on the ground of fraud unless they exercised ordinary prudence and care to protect themselves; that if they were in such a situation that they could have readily ascertained the truth of the matter and made no effort to do so they could not recover. There is a conflict of authority as to the extent to which the credulity of the victim of fraud operates to protect the wrongdoer, concerning which it has been said:

"The policy of the courts is, on the one hand, to suppress fraud, and, on the other, not to encourage negligence and inattention to one's own interests. The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has obvious dangers. But judicial experience exemplifies that the former is the less objectionable, and hampers less the administration of pure justice.

The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. The courts, however, are not entirely in accord as to the circumstances under which fraudulent representations may be relied on, although it cannot perhaps be denied that negligence as a defense in cases of fraud has been in danger of being pushed too far. There would seem to be no doubt that while, in the ordinary business transactions of life, men are expected to exercise reasonable prudence, and not to rely upon others, with whom they deal, to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple minded or unwary. . . . According to some decisions, the fact that a party who does not actually know the representations to be false has means of ascertaining their truth or falsity does not preclude him from relying on such representations. Every contracting party, it is declared, has a right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith. According to others the party to whom a representation is made must exercise reasonable diligence to detect the truth or falsity thereof where the parties stand on an equal footing and the matter is equally open to the inquiries of both parties." (12 R. C. L. pp. 360, 361.)

"The modern tendency—a wholesome one—is to restrict rather than extend the immunity of one who gains an advantage over another by purposely misleading him." (*Epp. v. Hinton*, 91 Kan. 513, 515, 138 Pac. 576; 14 A. & E. Encycl. of L. 122.) "The trend of the decisions of the courts of this and other states is towards the just doctrine, that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense to an action for rescission or for damages arising out of the deceit, that the party to whom the representations were made might, with due diligence, have discovered their falsity, and that he made no searching inquiry into facts." (*Speed v. Hollingsworth*, 54 Kan. 436, 440, 38 Pac. 496.) We think the present case falls within the rule which has been thus stated:

"If the fact represented is one which is susceptible of accurate knowledge and the speaker is or may well be presumed to be cognizant thereof while the other party is ignorant, and the statement is a positive assertion

containing nothing so improbable or unreasonable as to put the other party upon further inquiry or give him cause to suspect that it is false, and an investigation would be necessary for him to discover the truth, the statement may be relied on. (20 Cyc. 33.)

Complaint is also made of the refusal of a requested instruction to the effect that if the plaintiff's agent did not in fact make the false statement charged the appellees could not recover, although they may have believed with good reason that he meant to convey that meaning to them. The whole controversy was over the question whether the plaintiff's agent had made the statement referred to, and the jury believed that he had, or they could not have returned the verdict they did. We do not think the situation required the giving of the instruction requested.

The judgment is affirmed.